UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DR. STEPHEN C. WINGREEN

VERSUS

THE BOARD OF SUPERVISORS
FOR THE UNIVERSITY OF
LOUISIANA SYSTEM, ET AL

CIVIL ACTION

NO. 10-135-BAJ-SCR

**RULING**

This matter is before the Court on a motion by defendants, Board of Supervisors for the University of Louisiana System ("Board"), Dr. Jerry Wall ("Wall"), Dr. Thomas Hanson ("Hanson"), and Dr. Randall Webb ("Webb"), for judgment on the pleadings with regard to the claims made against them by plaintiff, Dr. Stephen C. Wingreen ("plaintiff"), in Civil Action No.10-135-BAJ-SCR (doc. 14). The motion is opposed (doc. 17) and the plaintiff subsequently amended his complaint (doc. 19). Jurisdiction is based on 28 U.S.C. §§ 1331 and 1367.

**BACKGROUND**

According to the complaint, the defendant hired plaintiff as an associate professor at Northwestern State University ("Northwestern"). Wall, Dean of the College of Business at Northwestern, interviewed plaintiff and assured him that it was a traditional tenure-track position, and that he would be evaluated for tenure as

would any other tenure-track professor. Plaintiff alleges that the offer letter he received stated that he "would be eligible to apply for tenure after at least one year, but no more than four years." Citing the interview, offer letter, appointment package, and the representations that this was a tenure-track position which would allow him to apply for tenure as early as one year from appointment, plaintiff accepted the position. Thereafter, plaintiff purchased a home in Natchitoches, Louisiana, and moved his family there. (Amended complaint, ¶¶ 13-20).

Plaintiff further alleges that, during the nine months he was employed at Northwestern, he published four intellectual contributions, maintained positive teaching evaluations, and established cordial relations with his colleagues. Northwestern's Retention Tenure and Promotion Committee ("RT&P"), having reviewed plaintiff's performance, recommended on February 25, 2009 that he be re-appointed for an additional year. According to the complaint, the Northwestern Faculty Handbook's rules for the retention of a tenure-track associate professor require: (1) Before March 1st, the RT&P reviews the performance of the professor and recommends retention or termination; (2) RT&P notifies the Dean and associate professor of its decision; (3) the Dean receives the RT&P recommendation, makes a recommendation of his own and forwards both to the Provost and the professor; (4) At all levels of the retention review process, applicants shall be kept apprised of decision outcomes. (Amended complaint, ¶¶ 21-23).

Despite the February 25, 2009 RT&P recommendation that plaintiff be reappointed, Hanson, then Provost, issued plaintiff a termination letter indicating that he would not be reappointed for the following year. Plaintiff was subsequently terminated on May 15, 2009, nine months after his appointment. Northwestern gave plaintiff no reason for its decision to terminate his employment. (Amended complaint, ¶¶ 22, 25).

Plaintiff claims that he was not given notification of the RT&P recommendation, in violation of the rules set forth in the Northwestern Faculty Handbook. He also alleges that the decision to terminate his employment was made by the Provost without the requisite recommendation of the Dean.

On March 23, 2009, plaintiff initiated a grievance procedure. Northwestern's Grievance Committee concluded on June 22, 2009 that university procedures were not followed, and that the Dean did not give plaintiff prior notification of his termination as required by the faculty handbook. (Amended complaint, ¶¶ 28, 29).

Plaintiff argues that he had a property right in reappointment as a tenure-track associate professor and a right under the faculty handbook to apply for tenure absent any "merit-based reason for termination" (Amended complaint, ¶ 34).[1] Thus, according to plaintiff, "the university's failure to observe the due process of tenure-track faculty re-appointments deprived [him] of the opportunity to become eligible to

---

[1] Plaintiff cites no source for the language "absent a merit based termination," but appears to infer its application from the fact that his position was "tenure-track" and his reading of the faculty handbook's retention rules noted above.

3

apply for tenure after his first year at [Northwestern]" (Amended complaint, ¶ 35). Plaintiff argues that, absent a merit based termination, he had a "clearly established right to reappointment to his tenure-track employment," and that Northwestern "violated [his] right to due process pursuant to the 14th Amendment." (Amended complaint, ¶ 39).

Plaintiff further asserts that he relied to his detriment on Northwestern's representation that his tenure-track appointment would give him the right to apply for tenure absent a merit based termination. Plaintiff states that he was forced to take a position at another university at a lower salary, was forced to move his family to Georgia after less than one year in Louisiana, and is unable to sell the house he bought upon moving to Louisiana. Plaintiff asserts in Count One that he is, therefore, entitled to recover damages for back pay including benefits, front pay including benefits, emotional distress and mental anguish, damage to reputation, moving expenses, expenses of owning two residences, loss of career opportunities, prejudgment interest, attorney's fees, and costs of these proceedings from the individual defendants pursuant to alleged violations of 42 U.S.C. §1983. Count Two requests reliance damages for the same pursuant to an alleged violation of La. Civ. Code art. 1967. Count Three prays for equitable and injunctive relief including "an injunction to prevent future violations, training on due process and the faculty handbook for all defendants, and front pay" (Amended complaint, ¶ 50).

## LAW AND DISCUSSION

### Motion for Judgment on the Pleadings

"A motion under Rule 12(c) for judgment on the pleadings is subject to the same standards as a motion to dismiss under Rule 12(b)(6)." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting, *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting, *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d (2007). "In deciding whether the complaint states a valid claim for relief, [courts] accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The Court, however, does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting, *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

### The §1983 Claims

Stating a claim under §1983 requires, *inter alia*, that the plaintiff allege a violation of a right secured by the Constitution or federal law. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Plaintiff claims that his firing was a deprivation of his property right in reappointment. Furthermore, he argues, that

5

because the representation that he would be able to apply for tenure as early as a year into his employment is evidence of a cognizable property right, the firing violated his right to apply for tenure. Plaintiff concludes that these deprivations were committed without due process in violation of his 14th Amendment right.

However, having a property interest in a thing subject to 14th Amendment protections requires more than an abstract need or desire for it. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed 2d 548 (1972).[2] A person must "have a legitimate claim of entitlement to it," and "must have more than a unilateral expectation of it." *Id.* Therefore, this legitimate expectation must stem from an independent source such as state law or "understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id.* Thus, plaintiff must identify some statutory or contractual provision or demonstrate a mutually explicit understanding that establishes an expectation of continued employment. *Staheli v. University of Mississippi*, 621 F.Supp. 449, 453 (N.D. Miss. 1985) *aff'd*, 854 F.2d 121 (5th Cir. 1988).

In the present case, plaintiff alleges no facts giving rise to a "legitimate claim of entitlement" in reappointment to his teaching position. Plaintiff was hired for a

---

[2]The Court notes that *Roth* is factually similar to the present case. In *Roth*, the Supreme Court held that where terms of an untenured professor's employment secured no interest in reappointment for the next year and there was no state statute or university rule or policy that secured his interest in reappointment or created any legitimate claim to it, he did not have a property interest in his appointment protected by the 14TH Amendment. The plaintiff notes the professor in *Roth* was hired for a year pursuant to a contract, whereas the plaintiff was on "tenure-track." This distinction, however, fails to address the fact that Wingreen was similarly untenured and makes no showing that he was guaranteed reappointment.

"traditional tenure-track position," and was told that he would be eligible to apply for tenure as early as a year into his employment. Plaintiff conclusorily claims a property right in his appointment as a tenure-track professor and a right to the "opportunity to become eligible to apply for tenure after his first year at NSU." (Amended Complaint ¶ 35).

However, simply being hired for a "tenure-track" position is insufficient, in itself, to give rise to any legitimate claim of entitlement to continued employment. The very existence of a tenure system necessarily implies that untenured professors are not assured of continued employment. *Staheli*, 854 F.2d at 124 (5th Cir. 1988); *see also, Roth*, 408 U.S. 564.[3] "The whole purpose of the distinction between tenured and non-tenured faculty [is] to give the University discretion over the employment of non-tenured teachers." *Staheli*, 854 F.2d at 125. Thus, the benefit of a tenured position is its permanency relative to untenured positions; the very benefit plaintiff seeks to assert without having obtained tenure. Furthermore, under Louisiana law, a person employed for an indefinite period is an at-will employee and, absent statutory, constitutional, or contract provisions to the contrary, may be terminated at any time without cause. La. Civ. Code art. 2747; *see also, Johnson v. Delchamps*, 897 F.2d 808, 810 (5th Cir. 1990).

---

[3] In *Staheli*, the Fifth Circuit refused to recognize a property right in an untenured professor's continued employment where he asserted a *de facto* tenure arrangement based on his satisfaction of tenure standards and understandings with his department head. The Court reasoned that the very existence of a tenure distinction precluded the existence of a right of reappointment in non-tenured professors. 854 F.2d 121.

7

Plaintiff mentions no contract provision or statute establishing that he was entitled to continued employment. Even accepting all of plaintiff's pleaded facts as true, the amended complaint fails to identify any guarantee, contractual or otherwise, allowing a reasonable inference that he would be reappointed for the following year. Plaintiff, therefore, references nothing that overcomes the default at-will status of his employment.[4] Thus, plaintiff has failed to articulate any legitimate claim to continued employment.

Without any cognizable and present right to continued employment, the plaintiff cannot have reasonably relied on an opportunity to apply for tenure which would mandate continued employment. Moreover, the interviewers' verbal statements and those in the offer letter and handbook describing the period when plaintiff would be eligible to apply for tenure do not guarantee that he would have the opportunity to do so. Accepting that plaintiff had a right to apply for tenure requires the unreasonable assumption that he was also entitled to be retained until he applied.

Accordingly, accepting as true the facts pled in the complaint, and construing all reasonable inferences in favor of the plaintiff, the Court finds that the plaintiff has

---

[4] The plaintiff argues that the procedures outlined in the faculty handbook give him a "right to apply for tenure absent a merit based termination," thus establishing that he is not an at-will employee. However, he fails to mention any particular provision in the handbook that implies any such right. Moreover, under Louisiana law, employment manuals do not confer contractual rights or create exceptions to at-will employment status. *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 (5th Cir. 1996); *see also, Mix v. University of New Orleans*, 609 So.2d 958 (La.Ct.App. 1992); *see also, Gilbert v. Tulane University*, 909 F.2d 124 (5th Cir. 1990).

failed to establish a property right protected by the 14th Amendment. Without any property right in reappointment or the opportunity to apply for tenure, the plaintiff's §1983 claims lack merit, and shall be dismissed.[5]

**The Louisiana Law Claims**

Under 28 U.S.C. § 1367, the statutory grant of supplemental jurisdiction is discretionary, even after the court no longer has original jurisdiction. Section 1367(c) provides: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if... (3) the district court has dismissed all claims over which it has original jurisdiction."

Thus, the court, in its discretion, may dismiss pendent state law claims after having disposed of federal claims under 28 U.S.C. § 1367(c)(3). In making this determination, the court must balance judicial economy, convenience and fairness to the litigants, as well as the principles of federalism and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This Court, having concluded that the plaintiff's federal claims shall be dismissed, notes that a parallel proceeding is pending in state court and finds that dismissing the remaining state law claims in this action will best serve the interests of judicial economy, convenience, fairness to the litigants and the principles of federalism and comity.

---

[5] There was substantial argument over Eleventh Amendment immunity with regard to the §1983 claim. Though the amended complaint cures most of the defects, the Court need not reach conclusions on the remaining issues where it has concluded that the plaintiff has no protected interest. For the same reason and those discussed in n.4, *supra*, the Court need not discuss whether the process employed by the university was proper.

## CONCLUSION

For all of the foregoing reasons, the motion by defendants, The Board of Supervisors for the University of Louisiana System, et al, for judgment on the pleadings and for costs and attorneys fees (doc. 14) is **GRANTED** insofar as the defendant seeks judgment on the pleadings, dismissing the plaintiff's federal claims with prejudice. Moreover, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims and this matter will be dismissed accordingly.

Baton Rouge, Louisiana, July 26, 2011.

BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA